Peck, J.,
dissenting:
I do not think this claimant is entitled to a judgment. Pis allegations are not supported by the proof. He alleges in his petition that immediately after executing the contract he proceeded to collect the required number of horses of the proper description, and did collect and place them in stables at convenient points to be forwarded to St. Charles, and was ready and willing and offered' to deliver them at the government stables at St. Charles before the 26th day of March, 1864, and was ready and willing and offered to do all things required to be done on his part by the contract. There is not a scintilla of evidence in the record to show that he had bought a horse, or was in any way prepared to deliver one or more horses. The proof is, that there were plenty of horses for sale, and that if he had desired to do so he could have purchased them. His contract was to deliver the horses at St. Charles; he does not show that he was ever there with any horses to deliver.
The contract stipulated that the horses upon being delivered should'be examined and inspected, &c., by a person or persons appointed by the United States, and that after the inspector had certified that they were in all respects as contracted for and fully equal to the specifications, they should be received and become the property of the United States. One of the specifications was that they should be “free from all defects.” The horses were to be of certain ages, of certain height, bridle-wise, of good flesh, &c., &e. Had he offered horses for inspection of the quality and description stipulated for, which were rejected, he might then have cause for complaint. He tad no right to offer any horses but such as were described in his contract, and if he offered none but such, he had no reason to suppose that they would be rejected.
To secure horses that were “free from all defects,” and to *270 protect themselves against imposition, the United States reserved the right to have them inspected by an inspector of their own choice, and in their own way, to which the claimant assented. It is now assumed by the claimant that, with regard to the inspection of the horses, the agents of the United States were about to do an unauthorized and improper act; this is not warranted.
The method of inspecting horses was different at different times and different places, as the proof of claimant shows, and if he desired to limit or control the inspection he should have provided for these things in his contract. As to inspection, he submitted himself to the orders and direction of the United States; and if he subsequently changed his mind, and was not willing to submit himself to those directions and orders, he should suffer the consequences.
Had he at any time offered horses under the contract which were not accepted, and the inspectors had attempted to brand or mart them improperly against his objection or protest, he might then have refused to offer more horses, and bring his action, for some remote, possible, or uncertain injury he feared he might sustain, but has not sustained, upon the assumption that the government was about to do him some wrong. Nothing of the kind having been attempted, I think he cannot recover.
Claimant alleges that, in consequence of the manner of inspection proposed by the defendant, which he says was contrary to the usages and customs of the trade in horses, and the known usage, custom, and practice of the government in buying horses, and not authorized by the contract, he refused to proceed, because it would involve him in ruinous losses. Without commenting particularly upon the proof in relation to this pretended custom or usage, I will comment upon what it is supposed to be, as gathered from the argument of the counsel. It was strenuously insisted that, because contractors with the United States often purchased horses of other parties upon the condition that they should be paid for by the contractors after they had passed inspection, the new method of inspection would or did prevent the further purchasing of horses in that way, the owners of them not being willing to submit their animals to the inspection required, with the hazard of not making a sale. If it be true that a custom or habit of trade between one of the contracting parties and those with whom he traffics can be *271 engrafted upon a contract with a corporation like the United States, which camiot be supposed to have any knowledge of custom; and if the custom had been proved, this claimant might have some ground to stand upon. The claimant did not contract to gather up these horses for the United States as an agent or officer would, but he sold the horses outright, without any regard to a usage between himself and those with whom he might deal. All this he took upon himself without reservation. If there was usage or custom regulating the trade between himself and others about horses, he should have stipulated in his contract in such way as to protect himself. He cannot enforce a custom upon a party not dealing with those who act upon it. Probably we would all agree that, in so far as the usage or custom insisted upon at the argument as controlling this case is concerned, it would have but little weight. A usage or custom can never be set up in opposition to a plain and clearly expressed intention, which in this case it appears to me is manifested by the contract.
I adhere to the ruling in the case of Spicer. I do not see any error of law in the case as reported. If there was anything on the face of the petition, which would or should have led the court to override the demurrer, it is but reasonable to suppose that, for the purpose of that decision, the court was invited not to consider such averments, in order that the claimant might be advised in good time whether or not he would succeed in his action upon such allegations as he believed he could support by proof.
If the custom relied upon as affecting inspection, when found to exist, was not sufficient to maintain his action, the claimant was probably prepared to relinquish his claim, not supposing he could succeed without its support.